UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DMYTRO MALAKHOV,

Petitioner,

v.

BRUCE SCOTT, et al.,[1]

Respondents.

CASE NO. 2:26-cv-00646-JHC

ORDER

I

**INTRODUCTION**

This matter comes before the Court on Petitioner Dmytro Malakhov's Emergency Motion for Temporary Restraining Order.  Dkt. # 4.  The Court has considered the materials filed in support of and in opposition to the motion, including the underlying habeas petition at Dkt. # 1 and its supporting exhibits, and the applicable law.  Being fully advised, for the reasons below, the Court DENIES the Motion.

---

[1] Petitioner's habeas and TRO filings identify as Respondents the "Warden of the detention facility where Petitioner is held," the Secretary of the Department of Homeland Security (Kristi Noem at the time of the habeas filing, vacant when the TRO was filed, and now Markwayne Mullin), and the ICE Field Office Director "responsible for Petitioner's detention."  Dkt. # 4 at 1.  For ease of reference, the Respondents are listed in the caption as "Bruce Scott, et al.," as it appears in Respondents' own filing, though Respondents note that "Bruce Scott it not a Federal Respondent and is not represented by the U.S. Attorney's Office," Respondents' counsel.  Dkt. # 8 at 1.

ORDER - 1

## II

### BACKGROUND

These facts are undisputed.  Petitioner is a citizen of Ukraine.  Dkt. # 4 at 2.  Petitioner arrived in the United States on June 5, 2023, and was paroled under Section 212(d)(5) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(d)(5).[2]  *Id.*  Petitioner has no final order of removal and has been detained since December 29, 2025, at the Northwest Immigrant Processing Center (NWIPC).  *Id.*  Petitioner says that he suffers from "serious chronic and congenital medical conditions," including congenital malformation of the urinary tract, aplasia of the right kidney, chronic pyelonephritis of the single left kidney, chronic pancreatitis treated with surgery in 1998, varicose vein disease treated with a surgery in 2021, sliding hiatal hernia and gastritis, and congenitally small lumbar spinal canal.  *Id.*  In support of these assertions, Petitioner attached to his habeas petition a range of medical documents from Ukraine, translated into English.  *See* Dkt. # 1-1 at 14–48.  Aside from these records, Petitioner presents some medical records from U.S. hospitals.  *See id.* at 49–52.  Petitioner says that while in detention, his health has "deteriorated, including: Sand detected in urine[,] Pulmonary abnormality requiring further evaluation[,] Persistent rash on both feed[, and] Subconjunctival hemorrhage (blood vessel rupture in the eye)."  Dkt. # 4 at 2.

Respondents, for their part, attach a sworn declaration from Eddie Wang, M.D., the NWIPC Clinic Director, who says that the NWIPC is a "level 4 facility, meaning that it can

[2] Habeas petitions and their associated briefing commonly refer to the sections of the INA as they appear in the enrolled bill and not by citation to the United States Code.  8 U.S.C. § 1182(d)(5) permits the government to admit, under temporary parole, any noncitizen "for urgent humanitarian reasons or significant public benefit" who is "applying for admission to the United States, but such parole of [the noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of [the government], have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

ORDER - 2

provide a higher level of medical care." Dkt. # 9 ¶ 1, 4–5.  Dr. Wang says that he is "familiar with" Petitioner's case and that he and the medical staff at NWIPC have been monitoring Petitioner's health and treating his conditions, including with medication, as they arise.  *See id.* ¶¶ 6, 8–22 (detailing health conditions and treatments).

Petitioner, via next friend Maryna Malakhova, his wife, petitioned for writ of habeas corpus and emergency motion for a temporary restraining order (TRO) together on February 20, 2026.  *See* Dkt. # 1.  This filing was docketed as a habeas petition, *see id.*, but was deficient since the Petitioner himself had not signed the petition.  *See* Dkt. # 3.  Petitioner's next friend signed the petition.  On March 16, Petitioner refiled an apparently identical document, this time docketed as an emergency motion for a temporary restraining order.  *See* Dkt. # 4.  On March 17, this Court directed Respondents to show cause why the writ of habeas corpus should not be granted, *see* Dkt. # 5, despite the signing deficiency.  On March 18, Respondents filed a notice of intent to oppose a TRO, Dkt. # 7, and responded the next day.  *See* Dkt. # 8.

### III

#### DISCUSSION

Preliminarily, the Court refers to General Order 10-25, which provides,

> The standard scheduling order is intended to provide a prompt resolution to habeas petitions that should reduce the contemporaneous filing of motions for temporary restraining orders seeking release from custody or the relief that is otherwise requested by the habeas petition.  Motions for temporary restraining orders should be reserved for matters where the petitioner alleges imminent, irreparable harm, such as imminent removal from the United States.  All motions for temporary restraining orders must meet the requirements of Federal Rule of Civil Procedure 65 and Local Civil Rule 65.

*See* Gen. Order 10-25, ¶ 5, In Re: Immigration Habeas Petitions Under 28 U.S.C. § 2241, United States District Court for the Western District of Washington (Dec. 18, 2025).  The referenced scheduling order was entered here at Dkt. # 5.  Petitioner's TRO motion does not appear to

ORDER - 3

allege "imminent" harm, though, as discussed below, it does allege irreparable harm.  Nor does Petitioner allege that his removal is imminent.  Thus, Petitioner's motion appears to contravene the directive of General Order 10-25.

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction.  *Juarez v. Asher*, 556 F. Supp. 3d 1181, 1186 (W.D. Wash. 2021) (citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2, 98 (1977)).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [their] favor, and (4) that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

"The Ninth Circuit has noted that interpretations of 'likelihood of success on the merits' include[] 'reasonable probability,' 'fair prospect,' 'substantial case on the merits,' and 'serious legal questions . . . raised."  *Sierra Tel. Co., Inc. v. Reynolds*, 703 F. Supp. 3d 1163, 1190 (E.D. Cal. Nov. 27, 2023) (citing *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (evaluating a motion for a preliminary injunction).  This "standard does not require the petitioners to show that it is more likely than not that they will win on the merits."  *Id.* (citation modified).

The underlying claim is a habeas petition under 8 U.S.C. § 2241.  *See* Dkt. # 1 at 1.  The habeas petition raises two bases for release.  The first is that his detention is discretionary under 8 U.S.C. § 1226(a) and that he should be released.  The second is that his poor health and apparently worsening condition while in detention amount to a constitutional violation under the Fifth Amendment.  Dkt. # 1 at 2–3; Dkt. # 4 at 2–3.  But Petitioner does not make a showing that he is likely to succeed on either ground.

ORDER - 4

In his § 1226(a) argument, Petitioner argues that "[c]ontinued confinement must be justified by individualized evidence of flight risk or danger to the community," but "[no] such evidence exists for Petitioner." Dkt. # 1 at 2; Dkt. # 4 at 2. That provision allows for the government to arrest and detain a noncitizen, like Petitioner, "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Under the usual process, every noncitizen apprehended under Section 1226(a), like Petitioner, is individually considered for release on bond. During this process, an Immigration and Customs Enforcement (ICE) officer first assesses whether the noncitizen has "demonstrate[d]" that "release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). If the ICE officer denies bond, the noncitizen may ask an immigration judge for a redetermination of the bond decision. 8 C.F.R. § 236.1(d)(1).

Petitioner says that he is detained "without individualized justification demonstrating that he poses a danger or flight risk." Dkt. # 1 at 1; Dkt. # 4 at 1. But Petitioner does not say whether a hearing occurred at all. Nor does Petitioner say that the government disregarded its own regulations in handling his case. The bond hearing, along with the rest of Petitioner's interactions with the government, should be detailed in Petitioner's A-File. But Respondents' counsel notes that they have not yet received that A-File.[3] On this record, then, there is simply not enough for the Court to evaluate whether the petition is meritorious. Thus, on his first basis, Petitioner has not shown a likelihood of success on the merits.

In his habeas petition's second basis for relief, Petitioner argues that "[p]rolonged detention without adequate medical care and without individualized review violates the Fifth Amendment," given his medical vulnerabilities. *See* Dkt. # 4 at 3. Petitioner also argues that

---

[3] Dkt. # 8 at 2 n.2 ("The undersigned has not yet received a copy of the A-file in this case but anticipates receiving a copy prior to the March 31, 2026 deadline for filing the return.").

ORDER - 5

because he has a single functioning kidney, "[a]ny delay in specialized medical evaluation and treatment may result in irreversible loss of kidney function," problematic in light of unspecified "constitutional considerations." *Id.* at 3–4. But Petitioner provides no argument on why his medical vulnerabilities make his detention unconstitutional, under the Fifth Amendment or otherwise. Petitioner's claim is thus better read as attacking the conditions of his confinement (that those conditions harm his health) and not its fact or its duration. But these types of claims, if they are intended as the sole means of release, cannot be brought via a habeas petition. In a claim "alleging that the terms and conditions of [the petitioner's] incarceration constitute cruel and unusual punishment" and violate the petitioner's "right to due process," the "appropriate remedy for such constitutional violations, if proven, would be a judicially mandated change in conditions," not "release from confinement." *Crawford v. Bell*, 599 F.2d 890, 892 (9th Cir. 1979); *see also Pinson v. Carvajal*, 69 F.4th 1059, 1064–65 (9th Cir. 2023) (same). Thus, Petitioner has not shown that he is likely to succeed on the merits of his second claim for relief.

The three remaining factors concern whether Petitioner will likely suffer irreparable harm without preliminary relief, the balance of equities favors Petitioner, and injunctive relief is in the public interest. *See Stormans*, 586 F.3d at 1127. "When the government is a party, the last two factors merge." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

Petitioner has shown a likelihood of irreparable harm. Petitioner points to two bases: risks to his health and risks to his minor children. While Petitioner says his "serious chronic medical conditions" have "deteriorated," Dkt. # 4 at 3, the record before the Court shows that he appears to be receiving treatment for these conditions and they are improving. *See* Dkt. # 9 ¶¶ 8–22 (sworn declaration by Dr. Wang, NWIPC doctor). Petitioner points to no other facts that would lead the Court to question Dr. Wang's account. Petitioner also says that his children face irreparable harm from his absence. Courts have recognized that irreparable harm falls on parents

ORDER - 6

subject to immigration detention and "collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011) ("[o]ther important [irreparable harm] factors include separation from family members, medical needs, and potential economic hardship.") (quoting *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001) (en banc)). And Respondents do not rebut any of Petitioner's contentions on this point. Thus, the Court concludes that Petitioner has shown irreparable harm through the harm faced by his children.

The merged factors favor the government. Petitioner says that "[p]rotecting constitutional rights and preventing avoidable deterioration of health in civil detention serves the public interest." Dkt. # 4 at 4. While "it is always in the public interest to prevent the violation of a party's constitutional rights," based on the above, it is not clear that any constitutional rights are being violated. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) (citation omitted). And Petitioner's health does not appear to be deteriorating. *See* Dkt. # 9 ¶¶ 14–22 (detailing Petitioner's treatment in detention, including a "moderate improvement" in one of his medical problems). Further, "there is a strong interest to be found in the effective and efficient enforcement of the nation's immigration laws." *Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). The Court is sensitive to Respondents' contention that granting the TRO here would essentially expedite Petitioner's habeas petition, an animating concern behind General Order 10-25 and the scheduling order entered at Dkt. # 5. Indeed, as noted above, Respondents' counsel says that they have not even received Petitioner's A-File yet. *See* Dkt. # 8 at 2 n.2. It is possible that details from the A-File could strengthen Petitioner's underlying habeas claim. The balance of equities and the public interest favor the government.

## IV
### CONCLUSION

For the reasons above, the Court DENIES the emergency motion for a temporary restraining order.  Dkt. # 4.  This order does not deny Petitioner's habeas petition pending at Dkt. # 1.  The Court directs that Petitioner's A-File be included with Respondents' forthcoming return memorandum.

Dated this 24th day of March, 2026.

John H. Chun
United States District Judge

ORDER - 8